**Larry BRACEY, Jr., Plaintiff-Appellant,**

v.

**Captain HERRINGA and Sergeant Gade, Defendants-Appellees.**

**No. 72-1078.**

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1972.

Decided Aug. 3, 1972.

Larry Bracey, Jr., pro se.

Robert W. Warren, Atty. Gen. and Michael R. Klos, Asst. Atty. Gen., Madison, Wis., for defendants-appellees.

Before CLARK, Associate Justice,* SPRECHER, Circuit Judge, and CAMP-BELL, District Judge.**

SPRECHER, Circuit Judge.

This appeal raises the apparently novel question of whether a prisoner's civil rights complaint is subject to a summary judgment dismissal based upon prison records consisting primarily of reports filed by defendant prison guards.

The plaintiff, Larry Bracey, Jr., brought an action *pro se* for damages and injunctive relief pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. He alleged that on July 28, 1971, while confined in the detention area of the segregation building at Wisconsin State Prison at Waupun, one of the defendants, prison guard Sergeant Gade, closed the outer wooden door of plaintiff's cell because plaintiff was talking in a normal tone to another inmate. Plaintiff in protest started a small fire in his cell; Gade then threw a bucket of water on the fire and on plaintiff. Plaintiff in return threw a cup of water on Gade, who returned with the other defendant, Captain Herringa, and other guards characterized as the "goon squad."

Plaintiff alleged that he was beaten by the guards, dragged out of his cell and thrown into an empty cell. There he was handcuffed and strapped to a metal bunk, a procedure known as "chaining down a prisoner." He alleged that as a result of the beating he suffered multiple injuries. Although not alleged precisely, it appears from the complaint that the plaintiff was "chained down" for more than 40 hours, during which time he was "left to urinate upon his own person and made to lie in said urine."

---

* Associate Justice Tom C. Clark, Supreme Court of the United States, retired, is sitting by designation.

** Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

The defendants, represented by the Attorney General of Wisconsin, filed a motion for summary judgment. Attached to the motion were six "conduct reports," all dated July 29, 1971, two written by defendant Gade, two written by defendant Herringa and two written by two other guards. Also attached was a log kept by the guards during the period that the plaintiff was "placed in restraints." The log purported to consist of notes on the plaintiff's behavior and condition written from time to time as various guards visited his cell. There was also an "inter-office memo" written by a captain of the guards noting that the plaintiff was removed from restraints at 7:45 p. m. on July 30, 1971. Finally, attached to the motion for summary judgment was an affidavit executed by an associate warden, in which he swore that the accompanying documents were taken from prison files and were made in the course of regular prison business.

The gist of the "prison records" was that the plaintiff went "completely out of control" when the fire was extinguished in his cell and that he took the offensive in attacking the guards, who reacted to subdue him and to protect themselves.

Although the district court in its opinion referred to "plaintiff's unverified brief in opposition," neither the record on appeal nor the district court docket sheet indicate that any response was filed by the plaintiff to the motion for summary judgment. On November 30, 1971, the district court granted defendants' motion for summary judgment and dismissed the action. The court in its opinion said, "Plaintiff having shown nothing that would impair the trustworthiness of the first-hand accounts of the persons involved in the incidents there reflected, the records furnish probative evidence admissible under the business entry statute, § 1732(a), Title 28 U.S.C. A."

■ This circuit's policy is to construe liberally the pleadings and papers filed by a prison inmate without funds who represents himself. Sigafus v. Brown, 416 F.2d 105, 106 (7th Cir. 1969). We therefore note the relevance of a question in plaintiff's reply brief: "How can appellant obtain an affidavit to this truth when he was kept in a closet like cell, in chains, unable to gather information as to who may have witnessed the beating, injuries, or the doctor's actions or denial of a proper examination, and plaintiff suffers under a twenty-four hour silent system and not permitted to talk to any other inmate; appellant is forced to live completely alone in his present segregation status."

There obviously exists a serious initial question of whether the summary judgment procedure should ever be employed against an incarcerated party, particularly against one held in solitary confinement, in view of the language of Fed.R.Civ.P. 56(f).[1] We have previously held in Harris v. Pate, 440 F.2d 315 (7th Cir. 1971), that a district court abused its discretion in refusing to grant a prisoner an extension of time to file affidavits in opposition to a motion for summary judgment.[2]

We need not reach any broad conclusions, however, unless we determine that the prison records were properly accept-

1. Rule 56(f): "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment. . . ." The Notes of the Advisory Committee on the 1963 Amendment state: [S]ummary judgment may be inappropriate where the party opposing it shows under subdivision (f) that he cannot at the time present facts essential to justify his opposition."

It can be argued that a segregated prisoner by virtue of his status shows that he cannot present facts essential to justify his opposition.

2. Judge Stevens said in that case, 440 F.2d at 318: "Plaintiff was not represented by counsel and, because of his incarceration, he was less able than an ordinary party to obtain affidavits effectively and expeditiously."

ed in support of the motion for summary judgment.

The policy permitting the admission into evidence of records made in the regular course of business [3] is based on the trustworthiness and reliability of that kind of records.[4]

In Hoffman v. Palmer, 129 F.2d 976 (2d Cir. 1942), the court of appeals excluded an accident report made by a since-deceased railroad engineer, offered by the defendant railroad trustees in the defense of a grade-crossing collision case. The court said at 991: "[B]y its very nature, [the report] is dripping with motivations to misrepresent." The Supreme Court affirmed, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Mr. Justice Douglas stated at 113, 63 S.Ct. at 480:

> "The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act." [5]

That prison guards may be held accountable under 42 U.S.C. § 1983 for physical beatings of prisoners,[6] deprivation of medical care,[7] or deprivation of hygienic conditions,[8] has been established for enough years that it can safely be assumed at least some guards write their reports on such occurrences with that possibility in mind.

In United States v. Ware, 247 F.2d 698, 700 (7th Cir. 1957), Judge Swaim excluded under section 1732 memoranda made by federal narcotics agents detailing the circumstances of heroin purchases. He said: "[E]ven if memoranda such as the ones in question are regular-

3. 28 U.S.C. § 1732(a) provides in part: "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter."

4. Professor McCormick said the business-records exception to the hearsay rule is justified by "the element of *unusual reliability* . . . furnished by the fact that in practice regular business records have a comparatively high degree of accuracy. . . ." McCormick, Evidence § 281 at 597 (1954).

5. The Supreme Court was interpreting what was then 28 U.S.C. § 695, which, with slight immaterial language changes, was reenacted in 1948 as 28 U.S.C. § 1732. As to the requirements of trustworthiness and reliability, the Court pointed out that to admit the possibly prejudiced accident report would be "a real perversion" of the rule: "The probability of trustworthiness of records because they were routine reflections of the

day to day operations of a business would be forgotten as the basis of the rule. . . . Regularity of preparation would become the test rather than the character of the records and their earmarks of reliability . . . acquired from their source and origin and the nature of their compilation. We cannot so completely empty the words of the Act of their historic meaning." 318 U.S. at 113–114, 63 S.Ct. at 480.

6. Gordon v. Garrson, 77 F.Supp. 477, 479 (E.D.Ill.1948): "Plaintiff avers that after he had been struck and beat over the head with a black-jack by an officer . . . he was dragged to a sub-basement solitary cell and chained by the wrist for 18 hours. . . ."

7. The complaint here alleges injuries to the plaintiff's "head, eye, ear, face, stomach, back and ankle" as a result of beating by the defendants with "large flashlights." Although the complaint does not allege deprivation of medical care, in his reply brief the plaintiff says that when he "demanded medical care, the prison physician merely peered in appellant's cell to see if he was alive or not. . . ." *See* Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957).

8. The hygiene cases are collected in Novak v. Beto, 453 F.2d 661, 665 (5th Cir. 1971).

ly prepared by law enforcement officers, they lack the necessary earmarks of reliability and trustworthiness."

We conclude that it was error for the district court to accept in support of the defendants' motion for summary judgment prison records which included the self-serving statements of the defendants themselves as well as statements of other prison guards who were subject to possible Civil Rights Act liability.[9] This kind of record lacks reliability and trustworthiness.[10]

In Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Supreme Court reversed this court's affirmance of the dismissal for failure to state a cause of action of an inmate's civil rights suit alleging physical injuries suffered while in disciplinary confinement. The Court said at 520–521, 92 S.Ct. at 596:

"Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"

As the Supreme Court declined to do in *Haines*, we intimate no view whatever on the merits of plaintiff's allegations but conclude that he is entitled to an opportunity to offer proof.

The judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

9. Police reports are ordinarily excluded when offered by the party at whose instance they were made. Yates v. Bair Transport, Inc., 249 F.Supp. 681, 690 (S.D.N.Y.1965).

10. The proposed Rules of Evidence for the United States Courts and Magistrates

(Revised Draft, March, 1971) expressly provide in the "hearsay exceptions" in Rule 803(6) for admissibility of records, of "regularly conducted activity" unless "the sources of information or other circumstances indicate lack of trustworthiness."